## Frank Smith, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

RAILROADS—*contributory negligence.* Evidence *held*, to show that the motorman of an electric interurban car was guilty of negligence preventing recovery for injuries sustained in a collision with a switching railroad train at a crossing.

Appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of fact. Opinion filed March 18, 1913.

GEORGE B. GILLESPIE, for appellant; ROBERT J. CARY, REARICK & MEEKS and GILLESPIE & FITZGERALD, of counsel.

C. H. BECKWITH and ACTON & ACTON, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Plaintiff was a motorneer on an electric car of the Danville Street Railway Company, an interurban railway. The defendant is a steam railroad; its main line runs east and west between Danville and Hillery. The railway of the electric line runs on the south side of the steam railroad, parallel and adjacent to it. The steam railroad runs in a cut about twelve feet deep

while the electric railway runs on the surface of the ground. The steam railroad has two parallel tracks; the north one is the main track and the south one, known as the "old main" is used for passing and switching purposes. There is a space of about seventy feet betwen the old main track and the track of the electric railway. A switch track from the steam railroad to a brick yard leads off from the old main track of defendant in a curve toward the southwest and crosses the interurban nearly at right angles on the surface of the ground. The car on which plaintiff was engaged as a motorneer on the way from Hillery to Danville while attempting to cross this switch track of defendant collided with the head freight car of a train which was being backed over the switch into the brick yard. Plaintiff was injured and brought this suit to recover damages therefor. He recovered a verdict of $2,095. A remittitur of $95 was entered and judgment rendered in his favor for $2,000. The defendant appeals.

A reversal of the judgment is asked on the ground that the accident happened because of the negligence of the appellee and that the evidence does not show that the appellant was negligent. The gist of the negligence charged is that the appellant negligently backed its cars over the switch track toward the brick yard across the electric line and it is specifically averred that the appellant negligently failed to have a good and sufficient light on the end of the train pushed toward the brick yard and did not give reasonable warning that the train was being backed over the crossing. There is evidence which standing alone tends to show that the defendant was negligent. Upon the question of the care of appellee, the evidence shows that the accident happened shortly after nine o'clock at night on the evening of November 20, 1910; that the train on the steam road consisted of eight cars and a locomotive pushing them toward the brick yard; that the night was dark and drizzly, and smoke from the

brick yard located near the crossing hung over the tracks. Five witnesses, Fowler the switchman, Mc-Guire the engineer on the engine, Knecht the conductor, Allen a helper on the brick yard engine, and Bowling the fireman all testify that Knecht and Allen were on the top of the first car with lanterns. The evidence also shows that Fowler, the switchman, had cut the cars off a train on the old main line about 100 feet west of the switch from the old main line, and that he then walked up the hill off the old main line to the interurban and along it about 200 feet to the interurban crossing ahead of the freight cars; that the freight train was not running over three or four miles an hour; that just across and south of the interurban track, Fowler threw a switch to put the cars on another track and was waiting for the train to come up the hill when he saw the electric car coming and stepped back from the switch about fifteen feet to the interurban crossing and gave a "washout stop signal," a hurry up stop signal, to the electric car, which was near the stop board and to the freight train, and the electric car gave two short whistles in answer to his signal, but the car kept on coming pretty fast and that the men on the top of the freight train were also giving stop signals. Fowler's evidence is corroborated by Knecht and Allen. The signal to the electric car motorneer could have been seen by him, if he had been on the look out as he should have been when approaching the crossing. The signal to the freight train had to be communicated to the engineer through the men on top of the car. The freight train was almost on the crossing and the slack of the train ran the end of the first freight car on the crossing. It cannot be doubted that Fowler was at the crossing to turn the switch, and appellee if he had been looking would have seen him. The freight train stopped with the front end of the first car just over the interurban track, where the interurban car struck it with such force that it knocked the freight car off the track, off its trucks, turned it

partly over and badly wrecked it; the front end of the electric car was also badly wrecked and the plaintiff severely injured. The only persons on the electric car were the conductor and the appellee. The appellee, who had been a motorneer for fifteen months, and the conductor on the electric car both testify that the electric car stopped at the stop board about 160 feet west of the crossing. The appellee testifies that he looked both ways on the railroad track and saw nothing, and that he did not see the freight train until he was fifteen or twenty feet from the crossing and that he immediately reversed the power on his car. A public highway runs on the north side of the steam railroad and parallel with it. A man named Palmer, his wife and daughter were driving west on the highway with a horse and buggy near where the collision took place at the time although they disagree as to whether they were east or west of the place where the collision occurred at the time it happened. Palmer says they were a little east of the place of the accident while Mrs. Palmer and the daughter say they were west, and Mrs. Palmer states that after the crash she turned around and looked back. They testify that it was raining a little but they could see to drive along the road by the light from the electric car and that they saw no lights on the top of the freight car and that the electric car "was running fast" was "runing at full speed" just prior to the crash. They were driving west and if they were west of the accident they naturally would not see any lights on the freight car without turning and looking behind them. The effect of the collision on the freight car and the interurban car with the other evidence all demonstrate by a clear preponderance that the freight car was running very slow and that the electric car was running at a high and dangerous rate of speed and that it approached the railroad crossing in a reckless and negligent manner. The appellee was guilty of gross negligence in the manner he drove the electric car on the crossing and under the circumstances no judgment in his favor

can be sustained.   The judgment is therefore reversed with a finding of fact.

*Reversed with finding of fact.*

Finding of fact to be incorporated in the judgment: The appellee was not in the exercise of ordinary care and was injured because of his own negligence.